**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN MICHAEL HALE,<br>Plaintiff,<br>vs.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | CASE NO. 5:25-CV-02385-DCN<br>DISTRICT JUDGE DONALD C. NUGENT<br>MAGISTRATE JUDGE AMANDA M. KNAPP<br>**REPORT AND RECOMMENDATION** |

Plaintiff Steven Michael Hale seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF Doc. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

## I. Procedural History

Mr. Hale filed his SSI and DIB applications on October 18, 2021, alleging a disability onset date of September 1, 2021. (Tr. 96-97.) He alleged disability due to COPD, five stents in heart, possible cancer, osteoarthritis in back and ankle, previously broken neck, and "hip, hand wrist, and arm problem." (Tr. 98, 106.) His application was denied initially and upon reconsideration (Tr. 96-97, 124, 134), and he requested a hearing (Tr. 157).

After conducting a hearing on Mr. Hale's claims (Tr. 55-95), an Administrative Law Judge ("ALJ") issued a decision denying his application on January 15, 2025, finding him not

disabled within the meaning of the Social Security Act since the alleged onset date (Tr. 17-32). On September 16, 2025, the Appeals Council denied Mr. Hale's request to review the ALJ decision, making that decision the final decision of the Commissioner. (Tr. 1-6.)

Mr. Hale filed the instant Complaint on November 5, 2025 (ECF Doc. 1), and the matter is fully briefed (ECF Docs. 9, 12, 13). Mr. Hale raises three assignments of error:

1) SSR 24-3p is contrary to law and was promulgated in excess of Agency authority.

2) The ALJ's RFC determination is unsupported by substantial evidence as he failed to properly address Plaintiff's need for an assistive device.

3) The ALJ's RFC determination is the product of legal error because the ALJ failed to properly evaluate Plaintiff's subjective complaints pursuant to SSR 16-3p and 20 C.F.R. §§ 404.1529, 416.929, leaving the Court unable to proceed to a substantial evidence review.

(ECF Doc. 9, p. 1.)

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Mr. Hale was born in 1972 and was 49 years old on the alleged disability onset date, making him a younger individual under Social Security regulations; he subsequently changed age category to closely approaching advanced age. (Tr. 31, 98, 107.) He has at least a high school education (Tr. 332), and he has not worked since the alleged onset date (Tr. 98, 107).

### B. Medical Evidence

#### 1. Relevant Treatment History[1]

On August 17, 2021, Mr. Hale presented to Adrienne C. Lowe PA-C, at Mercy St. Charles emergency department ("ER"). (T. 452-57.) He reported right-sided neck pain that

[1] The evidence summarized herein consists primarily of evidence cited by the parties that is relevant to the legal and factual issues before the Court. Neither party provided a summary of the medical evidence, only citing relevant medical records in the analysis portions of their briefs and relying on the ALJ's summary of the evidence. (*See* ECF Doc. 9, p. 5; ECF Doc. 12, p. 8.)

began after he tripped, fell, and twisted his neck. (Tr. 453.) He denied hitting his head and also denied numbness, tingling, chest pain, dizziness, lightheadedness, or visual changes. (*Id.*) His physical examination showed high blood pressure and tenderness over the right paraspinal and trapezius muscles; findings were otherwise normal. (Tr. 455.) A CT of the cervical spine showed no acute abnormalities and all labs were within normal ranges. (Tr. 456.) Mr. Hale was discharged with instructions to rest, apply heat, and take pain medications. (Tr. 457.)

On April 18, 2022, Mr. Hale presented to David Didur, DO, at the Pomerene Hospital ER reporting that he did a split while playing Frisbee golf and pulled the muscles in his upper legs. (Tr. 1195.) Dr. Didur noted his medical history of coronary artery disease ("CAD"), myocardial infarction, stent placement, lung disease, and high blood pressure; Mr. Hale acknowledged he had been "somewhat noncompliant with medication." (*Id.*) He had high blood pressure and some tenderness in the back and upper legs on examination, but findings were otherwise normal, including pulse oxygenation of 98%, normal heart rate and rhythm, strong and symmetric movement in all extremities, and no motor or sensory deficits. (Tr. 1196.) Mr. Hale declined x-rays, saying he only wanted "something stronger than Tylenol or ibuprofen for pain." (*Id.*) Dr. Didur prescribed cyclobenzaprine and referred him to a clinic. (*Id.*)

On February 6, 2023, Mr. Hale presented at the Pomerene ER with chest pain. (Tr. 1236.) He was diagnosed with non-ST elevation myocardial infarction and transferred to Cleveland Clinic Mercy Hospital. (*Id.*) On February 7, he underwent a left heart catheterization, coronary angiography, and placement of a primary drug-eluting stent. (Tr. 1241-42.) He was discharged on February 8 with instructions to follow-up with outpatient care (Tr. 1257) and prescriptions for aspirin, Lipitor, Coreg, Plavix, and Zestril (Tr. 1258). His physical examination on discharge showed clear lungs, normal heart sounds, and no rubs, murmurs, or gallops. (*Id.*)

On July 19, 2023, Mr. Hale underwent a diagnostic assessment at One Eighty with Paula Shearer, LISW-S. (Tr. 1365-69.) He was referred for assessment by Holmes County Probation after an aggravated menacing charge related to an accident with his ex-girlfriend. (Tr. 1365.) He scored high on a depression screening (*id.*) and reported isolating, occasional manic symptoms, and poor sleep (Tr. 1365-66). He also reported use of marijuana, alcohol, nicotine, and other controlled substances. (Tr. 1365.) On examination, he was cooperative, pleasant, attentive, engaged, motivated, and fully oriented; he demonstrated at least average intelligence and normal affect, appearance, speech, thought processes and content, memory, judgment, insight, and concentration. (Tr. 1368.) LISW Shearer recommended counseling. (Tr. 1369.)

On September 26, 2023, Mr. Hale attended a cardiology appointment at Aultman Deuble Heart and Vascular Hospital with Claudine Dumandan, M.D. (Tr. 1378-79.) He reported no notable symptoms. (Tr. 1378.) Aside from high blood pressure, his physical examination was normal, including normal breath and heart sounds, no murmur, rub, or gallop, and regular heart rate and rhythm. (*Id.*) Dr. Dumandan prescribed aspirin, atorvastatin, carvedilol, clopidogrel, and lisinopril. (Tr. 1379.) An electrocardiogram stress test performed on October 9, 2023, was negative for inducible ischemia and showed a normal physiologic response to stress. (Tr. 1381.)

On November 20, 2023, Mr. Hale attended a new patient appointment with Yasser Omran, M.D. (Tr. 1465-67.) His physical and neuropsychiatric examination was normal. (Tr. 1466.) Dr. Omran assessed CAD, noting multiple stents in place, and prescribed multiple cardiovascular medications. (Tr. 1467.) He also assessed obesity, anxiety, depression, and tobacco dependence. (*Id.*) Mr. Hale followed up with Dr. Omran on February 20, 2024, reporting he did not feel well, had decreased energy, and was sleeping poorly. (Tr. 1501.) His physical examination was normal (Tr. 1502), and Dr. Omran recommended melatonin before bed

(Tr. 1503). At an April 11 follow-up, Mr. Hale reported feeling and sleeping well but said his depression medication was not helping. (Tr. 1600.) His physical and mental examination was normal throughout, including normal mood and affect. (Tr. 1602.)

On April 30, 2024, Dr. Omran prescribed Mr. Hale a rollator walker with a seat due to obesity and CAD. (Tr. 1599.) At a follow-up on September 24, 2024, Mr. Hale reported intermittent chest pain that was non-exertional, occasional shortness of breath, and chronic pain. (Tr. 1660.) His physical examination showed high blood pressure but was otherwise normal, including normal heart rhythm and sounds. (Tr. 1661.) On July 30 and November 19, 2024, Mr. Hale told Dr. Omran he felt well with no complaints; he had high blood pressure, but his physical and mental examination findings were otherwise normal. (Tr. 1658-59, 1677-78.)

On May 30, 2024, Mr. Hale attended an appointment with Mark Dalpra, CNP, at the Counseling Center to address mood disorder. (Tr. 1572-74.) He reported doing well and feeling happy to be getting off probation soon. (Tr. 1573.) His mental status examination showed appropriate rapport, poor grooming with body odor, full orientation, euthymic mood, appropriate affect, coherent speech, no hallucinations, appropriate thought content/processes, normal psychomotor function, fair insight and judgment, and good memory. (Tr. 1572-73.)

**2. Opinion Evidence**

On July 18, 2023, state agency medical consultant Gary Hinzman, M.D., reviewed Mr. Hale's file and found there was insufficient evidence to assess the severity of his conditions. (Tr. 102, 110.) On May 21, 2024, state agency medical consultant Mehr Siddiqui, M.D., reviewed updated medical evidence on reconsideration and determined that Mr. Hale had severe cardiovascular and respiratory impairments. (Tr. 118, 128.) In a physical Residual Functional Capacity ("RFC") assessment, he opined that Mr. Hale could: occasionally lift 20 pounds and

frequently lift 10 pounds; stand/walk and sit for six hours in an eight-hour workday; and never climb ladders, ropes, or scaffolds. (Tr. 120-21, 130-31.) He further opined that Mr. Hale should avoid concentrated exposure to extreme heat or cold and humidity and avoid all exposure to fumes, odors, dust, gases, poor ventilation, and hazards. (Tr. 121, 131.)

On July 29, 2023, state agency psychological consultant Audrey Todd, Ph.D., reviewed Mr. Hale's file and found there was insufficient evidence to substantiate the presence of a mental health disorder. (Tr. 103, 111.) On November 29, 2023, state agency psychological consultant Kari Kennedy, Psy.D., reviewed updated evidence and conducted a Psychiatric Review Technique on reconsideration. (Tr. 119, 129.) She opined that Mr. Hale had a mild limitation in the ability to adapt or manage oneself and no other mental limitations. (Tr. 119, 129.)

**C. Function Reports**

Mr. Hale completed two Adult Function Reports, on December 21, 2023 (Tr. 379-88) and January 16, 2024 (Tr. 389-96). He stated that his conditions affected him in that he could not stand for long periods, got out of breath "really fast," feared being around people, felt depressed all the time, had trouble using his hands and legs due to stiffness and pain, and experienced headaches and neck pain. (Tr. 379, 389.)

Regarding his activities of daily living, Mr. Hale said he spent most of the day lying in bed and watching television, only getting up to make simple meals and go to doctor's appointments. (Tr. 380, 390.) He could independently care for his personal hygiene, but it took longer, and he had to take breaks due to stiffness. (*Id.*) He was able to slowly clean his kitchen every two weeks and do laundry once a year. (Tr. 381, 391.) He only went out for medical appointments or to go to the store, either driving himself or taking a Medicaid cab. (Tr. 382, 392.) He shopped in stores or online once or twice a month for about an hour. (*Id.*)

Mr. Hale claimed his conditions limited his abilities to lift, squat, bend, stand, walk, sit, kneel, climb stairs, complete tasks, use hands, and get along with others. (Tr. 384, 394.) He indicated he could only walk 100 or 200 feet before needing to stop and rest (*id.*), but he did not report the use of an assistive device (Tr. 385, 395).

**D. Hearing Testimony**

At the hearing on December 23, 2024, Mr. Hale testified in response to questioning by the ALJ and his attorney. (Tr. 63-81.) A Vocational Expert ("VE") also testified. (Tr. 81-92.)

The VE testified that a hypothetical individual of Plaintiff's age, education, and work experience, with the functional limitations described in the ALJ's RFC determination, could not perform Mr. Hale's prior work, but could perform representative positions in the national economy, including office cleaner, food service worker, and marker. (Tr. 84-85.) If a rollator walker was required, the VE opined that it would eliminate jobs at the light level of exertion. (Tr. 92.) The VE also testified that it would preclude competitive employment if the person would either be off task 10% of the workday or absent more than two days a month. (Tr. 89.)

In response to inquiries from the ALJ, the VE explained that he relied upon government sources for his testimony, including resources from the Department of Labor and Bureau of Labor Statistics, the Occupational Employment Survey ("OES"), and the Standard Occupational Classifications ("SOC"). (Tr. 90.) Additionally, he testified that he relied on the North American Industry Classification System ("NAICS") and Job Browser Pro to estimate the number of industries in which each occupation could be found. (*Id.*) He confirmed that the documents he relied upon use the same definitions of exertion, skill level, and education as Social Security Administration ("SSA") policy and regulations. (Tr. 91.)

## III. Standard for Disability

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.1520[2]; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform other work available in the national economy. *Id.*

## IV. Law & Analysis

### A. Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall

---

[2] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in most instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)) (alteration in original). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004))). A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

### A. First Assignment of Error: Plaintiff's Challenge to the Validity of SSR 24-3p is Not Properly Before this Court

In his first assignment of error, Mr. Hale argues that remand is required because Social Security Ruling ("SSR") 24-3p is contrary to law and was promulgated in violation of the Administrative Procedure Act ("APA"). (ECF Doc. 9, pp. 6-17; ECF Doc. 13.) In response, the Commissioner argues that Plaintiff's challenge to SSR 24-3p is not properly before the Court

because: (1) Plaintiff has not alleged harmful error and Sentence Four of 42 U.S.C. § 405(g) only authorizes remand or reversal that "is predicated on decisional error" (ECF Doc. 12, pp. 9-11); (2) Plaintiff did not mention the APA in his Complaint (*id.* at p. 11, n. 6); and (3) SSR 24-3p was not promulgated in excess of agency authority (*id.* at pp. 11-16). For the reasons discussed below, the undersigned concludes that Mr. Hale has not shown he has standing to bring the claim described in the first assignment of error and therefore this Court lacks jurisdiction to decide that claim on its merits.

**1. Relevant Regulatory Background**

The Social Security Act gives the Commissioner "full power and authority" implement its provisions by adopting "reasonable and proper rules and regulations." 42 U.S.C. § 405(a); *see Bowen*, 482 U.S. at 145 ("Our prior decisions recognize that Congress has conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the Act.") (citations and internal marks omitted). Enactment of these rules and regulations must comply with the APA, which "sets different procedural requirements for 'legislative rules' and 'interpretive rules': the former must be promulgated pursuant to notice-and-comment rulemaking; the latter need not." *Tennessee Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) (citing *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015); 5 U.S.C. § 553(b)(A)). A legislative rule issued without abiding by the proper procedures is invalid. *Id.* (citing *S. Forest Watch, Inc. v. Jewell*, 817 F.3d 965, 972 (6th Cir. 2016)).

In December 2024, the SSA published SSR 24-3p, *Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions*, 89 Fed. Reg. 97158, 97158-61 (Dec. 6, 2024), which rescinded and replaced SSR 00-4p, *Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational*

*Info. in Disability Decisions*, 2000 WL 1898704 (Dec. 4, 2000). SSR 00-4p had established that occupational evidence from a VE "generally should be consistent with the occupational information supplied by the DOT [Dictionary of Occupational Titles]." 2000 WL 1898704, at *1. In that context, ALJs were required to "elicit a reasonable explanation" for any conflict between VE evidence and the DOT before relying on VE evidence in a disability determination, and to "resolve the conflict" by determining whether the VE's explanation was "reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." *Id.*

In SSR 24-3p, the SSA acknowledged that the DOT, while still "a valid and reliable source of occupational information," was no longer "the only reliable source for occupational information." 89 Fed. Reg. at 97159. And because other reliable and commonly used systems for classifying occupations were "structurally, very different from the DOT," the Ruling recognized that it was logistically difficult for ALJs "identify and resolve conflicts" between VE evidence and the DOT when VEs relied on those other data sources. *Id.* SSR 24-3p therefore rescinded the requirement that ALJs "identify and resolve conflicts" between VE evidence and the DOT. *Id.* Instead, the Ruling generally permitted VEs to "provide evidence based on their professional experience and any reliable source of occupational information that is commonly used in the vocational profession and relevant under [Social Security] rules." *Id.* at 97160. In doing so, the Ruling specified that VEs are expected to identify their sources of data, explain their general approach to estimating job numbers, and explain and account for any differences in the definitions of exertion, education, or skill levels in their data sources and the DOT. *Id.*

In contrast to the requirement in SSR 00-4p that ALJs "elicit a reasonable explanation" for any conflicts between the VE's evidence and the DOT and then "resolve the conflict," 2000 WL 1898704, at *1, SSR 24-3p specified that VEs are "expect[ed]" to provide the specified

information, while ALJs "may instruct VEs . . . to address other concerns as needed," 89 Fed. Reg. at 97160. Further, when a claimant is represented, SSR 24-3p provides that the representative is expected "to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." *Id.*; *see also id.* at n. 10 (citing 20 C.F.R. §§ 404.1740 and 416.1540).

**2. This Court Does Not Have Jurisdiction under Article III to Review Plaintiff's Challenge to SSR 24-3p**

Mr. Hale argues that SSR 24-3p is invalid because it is a legislative rule that was promulgated without undergoing the APA's notice and comment procedures. (ECF Doc. 9, pp. 7, 10-16.) Instead of interpreting the regulations that govern a representative's conduct before the SSA, he argues that SSR 24-3p "creates a whole *new* framework" that "expect[s]" representatives to "raise any relevant questions or challenge about the VE's testimony at the time of the hearing." (*Id.* at pp. 10-13 (emphasis in original).) He seeks reversal without remand so that "the Agency is enjoined and restrained from implementing SSR 24-3p against Plaintiff until SSR 24-3p has gone through proper notice-and-comment procedures." (*Id.* at p. 17.)

The Commissioner argues in response that Plaintiff's claim is "untethered" from the ALJ decision in his case (ECF Doc. 12, p. 9) and that he is challenging SSR 24-3p "in the abstract, seeking what would amount to an advisory opinion," which the Court may not provide (*id.* at p. 11 (citing *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions.") (citation omitted)).

Under Article III, Section 2 of the United States Constitution, federal courts only have jurisdiction to decide "cases or controversies," which the Sixth Circuit has explained requires a "'real and substantial controversy,' capable of 'specific relief.'" *Hargrove v. Healy*, 155 F.4th 530, 532 (6th Cir. 2025), *cert. denied,* 146 S. Ct. 2582 (2026) (quoting *North Carolina v. Rice*,

404 U.S. 244, 246 (1971) (per curiam)). "This jurisdictional limitation requires, among other things, that a party wishing to litigate a dispute before a federal court demonstrate standing." *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 303 (6th Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992) (explaining that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III")).

Standing is a threshold issue, and a failure to establish standing means a court cannot address the merits of a claim. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case.") Even where standing has not been directly challenged, this Court has both the ability and the obligation to raise the issue of standing sua sponte where it is in doubt. *See Loren v. Blue Cross & Blue Shield of Mich*., 505 F.3d 598, 607 (6th Cir. 2007) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*."). Indeed, the Supreme Court explains: "As a jurisdictional requirement, standing . . . cannot be waived or forfeited." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662-63 (2019).

While the Commissioner has not directly contested Mr. Hale's standing to challenge SSR 24-3p in this case, he correctly observes that Mr. Hale did not challenge the VE's testimony or findings as "flawed or unsound in any way" or identify any resulting harm; instead, the Commissioner asserts that Mr. Hale challenged SSR 24-3p "in the abstract, seeking what would amount to an advisory opinion." (ECF Doc. 12, pp. 10-11.) In this context, the undersigned finds it appropriate and necessary to address standing before considering the merits of the claim.

As the party invoking federal jurisdiction, Mr. Hale bears the burden to establish that he has Article III standing to pursue each claim and form of relief. *See Loren*, 505 F.3d at 607

(citing *Lujan*, 504 U.S. at 561); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). To establish standing, he must show that: (1) he has "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) the injury would likely be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-561 (cleaned up); *see also Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021); *Chapman*, 940 F.3d at 303.

Beginning with the first two prongs—whether Mr. Hale demonstrated an "injury in fact" that is "fairly traceable to the challenged action"—Mr. Hale asserts that his challenge to SSR 24-3p addresses how the new Ruling "would impact his case" because his initial brief "addressed the impact the SSR change would have on a representative's ability to meaningfully engage in questioning the vocational expert." (ECF Doc. 13, p. 2 (citing ECF Doc. 9).) In the initial brief, Mr. Hale had argued that language in SSR 24-3p requiring representatives "to raise any relevant questions or challenges about the VE's testimony at the time of the hearing," 89 Fed. Reg. at 97160, was unreasonable because it "created new and unreasonable duties for claimants' representatives during the hearing" and "stripped away" representatives' prior ability to challenge vocational testimony via post-hearing submissions. (ECF Doc. 9, pp. 13-15.)

While Mr. Hale identified potential harm that SSR 24-3p's new provisions might cause to a hypothetical claimant, he did not identify actual injuries that the provisions of SSR 24-3p caused to the development of the record in this case. For example, while Mr. Hale argues that a representative may not have the "technical know-how to question the VE" regarding some "unexpected" or "abnormal testimony" (ECF Doc. 13, p. 3), he does not assert that any such VE testimony was offered in this case. Instead, a review of the transcript reveals that Mr. Hale's representative did not ask any questions of the VE, nor did he indicate that he wished to

challenge the VE's testimony via a post-hearing brief. (*See* Tr. 93.) And while Mr. Hale argues that an "inability to question the VE after the date of the hearing will prevent meaningful cross-examination" (ECF Doc. 13, p. 3), he does not assert that his representative sought or was denied an opportunity to present post-hearing argument regarding the VE testimony in this case. In fact, not only did his representative fail to request such an opportunity at the hearing (Tr. 93), the record also reflects that his representative submitted a post-hearing letter that did no more than ask that post-hearing development be closed and a decision issued by the ALJ (Tr. 441).

In this context, the undersigned concludes that Mr. Hale has not met his burden to show that he "suffered an injury in fact" that is "concrete and particularized," "actual or imminent," and "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560-61. Instead, the injuries he describes are wholly theoretical, and he has made no effort to argue or show that he actually suffered, or imminently will suffer, any such injuries in this case.

Turning to the third prong of the standing inquiry, the undersigned further concludes that Mr. Hale has failed to show that he suffered a harm that could be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-561. While he speculates that it would have "potentially alter[ed]" the VE's answers to the ALJ's hypotheticals if the VE tailored his answers to the requirements of SSR 00-4p rather than SSR 24-3p (ECF Doc. 13, p. 2), he has neither shown nor explained how that outcome might have been different if the SSR 00-4p framework were applied in this case. Since Mr. Hale's challenge focuses on the "shift [of] the responsibility of validating VE job evidence from what was formerly the ALJ under SSR 00-4p to now claimants' representatives 'at the time of the hearing'" (ECF Doc. 9, pp. 11-12 (quoting SSR 24-3p)), he apparently contemplates an injury resulting from that shift of responsibility. But as discussed above, he has not argued and the record does not support a finding that his representative was

denied any opportunities to challenge or invalidate the VE evidence in this case as a result of the regulatory change from the framework in SSR 00-4p to the framework in SSR 24-3p.

For all the reasons set forth above, the undersigned concludes that Mr. Hale has not met his burden to show that he has Article III standing to raise the SSR 24-3p challenge in the first assignment of error because he has neither alleged nor shown that the application of SSR 24-3p in this case caused a concrete and particularized injury to Plaintiff that would be redressed by reversing the ALJ decision and declaring SSR 24-3p invalid. *See Lujan*, 504 U.S. at 560-561; *Chapman*, 940 F.3d at 303. This finding is consistent with the findings of other district courts who considered similar challenges to SSR 24-3p. *See, e.g., Arce v. Comm'r of Soc. Sec.*, No. 3:25-CV-2372, 2026 WL 2444523, at *15-16 (N.D. Ohio Aug. 20, 2026) ("Because Mr. Arce cannot show a concrete and particularized injury that is fairly traceable to the SSA's adoption of SSR 24-3p and redressable by a favorable decision, he lacks standing to press this argument—either through the APA or through the Social Security Act—and any decision on the merits would amount to an improper advisory opinion."); *Lisa W. v. Bisignano*, No. 8:25-cv-2804-JMC, 2026 WL 2024675, at *6 (D. Md. July 14, 2026) (finding the "judicial input" sought "to address the abstract chain of speculative reasoning Plaintiff advances would constitute an advisory opinion"); *Benjamin C. v. Comm'r of Soc. Sec.*, No. 1:25-cv-1341-RLH, 2026 WL 1682580, at *5 (C.D. Ill. June 10, 2026) (finding the plaintiff lacked standing because he "forfeited nothing[] and SSR 24-3p . . . made him no worse off" when the plaintiff "d[id] not take issue with how the vocational expert testified in his case").

Accordingly, the undersigned recommends a finding that this Court lacks jurisdiction to consider the claims asserted in Mr. Hale's first assignment of error.[3]

[3] Because the undersigned concludes that this Court lacks jurisdiction to decide the merits of the first assignment of error, the Court need not address the Commissioner's additional arguments that: Plaintiff's challenge to SSR 24-3p

### B. Second Assignment of Error: The ALJ Did Not Err in Finding Plaintiff's Assistive Device Was Not Medically Necessary

In his second assignment of error, Mr. Hale argues that the ALJ "failed to provide any legally sufficient explanation as to why a walker was not medically necessary" and that this finding was not supported by substantial evidence. (ECF Doc. 9, p. 21.) He further asserts that the error is harmful because the VE testified that "the use of a walker would result in a reduction to sedentary work," and a sedentary RFC would have resulted in a finding that he was disabled based on his age. (*Id.*) In response, the Commissioner argues that the ALJ's RFC determination is supported by substantial evidence because the record did not show that an assistive device was medically necessary under SSR 96-9p. (ECF Doc. 12, pp. 16-19.)

The Sixth Circuit has explained that a hand-held assistive device "cannot be considered an exertional limitation" for purposes of an RFC if it "was not a necessary device for claimant's use." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002); *see also Drew v. Comm'r of Soc. Sec. Admin.*, No. 1:23-CV-01353-DAC, 2024 WL 2294784, at *9 (N.D. Ohio May 21, 2024) ("The ALJ is not required to incorporate the use of a cane in the RFC unless the cane is medically required.") (citing *Carreon*, 51 F. App'x at 575). Under SSR 96-9p, an ALJ may only "find that a hand-held assistive device is medically required" if the record contains "medical documentation" that: (1) "establish[es] the need for a hand-held assistive device to aid in walking or standing"; and (2) "describ[es] the circumstances for which [the device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 61 Fed. Reg. 34478, 34482 (July 2, 1996).

---

was not properly raised under 42 U.S.C. § 405(g) (ECF Doc. 12, pp. 9-11); "[a]ny APA claim is not properly before the Court" (*id.* at p. 11 n. 6); and "SSR 24-3p is an interpretive rule, not a legislative one" (*id.* at pp. 11-16).

As to the first requirement, SSR 96-9p calls for medical documentation of "the need for a hand-held assistive device to aid in walking or standing," not simply provider notations that a claimant was observed using an assistive device. 61 Fed. Reg. at 34482; *see Barnes v. Comm'r of Soc. Sec.*, No. 5:21-CV-01688-JDA, 2023 WL 2988346, at *8 (N.D. Ohio Mar. 22, 2023) (collecting cases) ("[T]he fact that various physicians noted Mr. Barnes' use of a cane or a walker does not establish that an assistive device was medically necessary for purposes of SSR 96-9p."); *Phillips v. Comm'r of Soc. Sec.*, No. 5:20-CV-01718-CEH, 2021 WL 5603393, at *10 (N.D. Ohio Nov. 30, 2021) ("Although various medical records note that Claimant presented at appointments using a cane, these notations do not meet the requirements of SSR 96-9p.").

As to the second requirement, SSR 96-9p calls for medical documentation "describing the circumstances for which [the device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)," not simply a prescription for a device. 61 Fed. Reg. at 34482; *see Barnes*, 2023 WL 2988346, at *8 (collecting cases). This is consistent with the Seventh Circuit's finding that SSR 96–9p requires an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012); *see also Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) ("[T]he legal issue does not turn on whether a cane was 'prescribed' for Spaulding, but whether a cane was 'medically required.'); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (finding prescription and references to use of cane without discussion of medical necessity to be insufficient to show medical necessity).

Here, the ALJ addressed the question of medical necessity at Step Three, explaining:

> [A]cknowledging the existence of a prescription for a wheeled walker [], I nevertheless find that the evidence does not include documented medical need for a hand-held, gait-assistive device necessitating two hands to operate. The claimant had denied, as recently as January 2024 [], use or ownership of such. Clinical

> studies throughout the evidence, before and since the issuance of this prescription, describe a normal gait, or that the claimant is ambulating "fine" [], despite that the claimant assured me he took his walker to appointments []. Likewise, clinical studies describe normal coordination [], or grossly intact neurological function [].

(Tr. 21 (citing Tr. 385, 395, 455, 1195, 1378, 1466, 1502, 1599, 1601, 1637, 1659, 1661).)

In challenging this analysis, Mr. Hale argues that the ALJ's discussion of medical necessity is vague, mischaracterizes the record, and fails to adequately explain why the ALJ's findings are supported. (ECF Doc. 9, p. 18.) First, he asserts that the ALJ "cherry-picked" the record when he "rel[ied] on notations that Plaintiff denied ownership of a walker" three months before his walker prescription was issued. (*Id.* at pp. 18-19.) Second, he asserts that the ALJ improperly played doctor when he relied on "irrelevant" exams showing "a normal gait and no neurological findings," since the walker "was not prescribed for gait difficulties, but due to Plaintiff's obesity." (*Id.* at pp. 19-20.) Finally, Mr. Hale argues "[t]he ALJ cannot determine that a walker is not medically necessary when a treating physician prescribed the device and no other medical source has provided any contradicting opinion." (*Id.* at pp. 20-21).

Beginning with Mr. Hale's first argument, the ALJ's analysis does not support a finding that he mischaracterized or "cherry-picked" the record. The ALJ explicitly "acknowledge[d] the existence of a prescription for a wheeled walker" (Tr. 21 (citing Tr. 1599 (4/30/24 rx))) before he observed that "[t]he claimant had denied, as recently as January 2024 . . ., use or ownership of such" (*id.* (citing Tr. 395 (1/16/24 function report) and Tr. 385 (12/21/23 function report)). The ALJ accurately characterized the record both when he observed that Mr. Hale was prescribed a walker and when he said Mr. Hale had denied the use of a walker as recently as January 2024. Thus, the ALJ's findings were both accurate and supported by substantial evidence.

Turning to Mr. Hale's second argument, the mere fact that LPN Hall prescribed him a walker based on his diagnoses of obesity and coronary artery disease (Tr. 1599) did not make the

ALJ's observations regarding Mr. Hale's normal physical examination findings "irrelevant" to the medical necessity analysis. As discussed above, SSR 96-9p requires medical documentation of "the need for a hand-held assistive device to aid in walking or standing" and "describing the circumstances for which [the device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." 61 Fed. Reg. at 34482. In the context of assessing Mr. Hale's "need for a hand-held assistive device to aid in walking or standing," *id.*, it is clear that physical examination findings showing a normal gait, "fine" ambulation, normal coordination, and grossly intact neurological function (Tr. 21) are relevant to the ALJ's medical necessity analysis.[4] Conversely, in the context of assessing "the circumstances for which [the device] is needed," 61 Fed. Reg. at 34482, it is also clear that a mere prescription for a walker is insufficient to demonstrate medical necessity, *see Barnes*, 2023 WL 2988346, at *8 (collecting cases); *Spaulding*, 379 F. App'x at 780 ("[T]he legal issue does not turn on whether a cane was 'prescribed' . . . but whether a cane was 'medically required.'). Thus, Mr. Hale's argument that the ALJ played doctor when he considered Mr. Hale's normal physical examination findings in the medical necessity analysis lacks merit.

Finally, Mr. Hale's argument that the "ALJ cannot determine that a walker is not medically necessary when a treating physician prescribed the device and no other medical source has provided any contradicting opinion" (ECF Doc. 9, p. 21) is patently contrary to law. As discussed above, a mere prescription is insufficient to demonstrate medical necessity. *See* 61 Fed. Reg. at 34482; *Barnes*, 2023 WL 2988346, at *8; *Spaulding*, 379 F. App'x at 780. And Mr. Hale has failed to identify any "medical documentation" that "describe[es] the circumstances for which [the walker] is needed (i.e., whether all the time, periodically, or only in certain situations;

[4] Notably, Mr. Hale does not cite any authority to support his conclusory assertion that obesity—despite reportedly necessitating a wheeled walker—"would not impact his gait on examination." (ECF Doc. 9, p. 19.)

distance and terrain; and any other relevant information)." SSR 96-9p, 61 Fed. Reg. at 34482. Given the clear absence of an "unambiguous opinion . . . stating the circumstances in which [the] assistive device is medically necessary," the undersigned concludes that Mr. Hale has not met his burden to show that the ALJ lacked substantial evidence to support his finding that an assistive device was not medically necessary. *Thacker v. Comm'r of Soc. Sec.*, No. 3:21 CV 1617, 2022 WL 3369533, at *3 (N.D. Ohio Aug. 16, 2022) (quoting *Tripp*, 489 F. App'x at 955); *see also Barnes*, WL 2988346, at *8 ("Mr. Barnes has failed to identify any records describing the precise circumstances in which an assistive device was medically necessary and has thus not met the requirements of SSR 96-9p.").

Moreover, "[t]he responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1546(c); 416.946(c)). And the Sixth Circuit has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (citations omitted). As discussed above, the ALJ considered the requirements to find medical necessity under SSR 96-9p in light of the evidence, including Mr. Hale's prescription for a walker. (Tr. 21, 24.) This Court cannot overturn the ALJ's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. Because the ALJ's finding that "the evidence does not include documented medical need for a hand-held, gait-assistive device" is not at odds with SSR 96-9p, the lack of a medical opinion "contradicting" the prescription for a walker does not deprive the ALJ's medical necessity findings of the support of substantial evidence. Importantly, the question before this Court is not whether Mr. Hale can

present facts to support a finding of medical necessity. Even if there is substantial evidence to support such a finding, this Court cannot overturn the ALJ's finding to the contrary "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477.

For the reasons set forth above, the undersigned concludes that Mr. Hale has not met his burden to show that the ALJ's medical necessity findings lacked the support of substantial evidence. Accordingly, the undersigned finds the second assignment of error lacks merit.

**C. Third Assignment of Error: The ALJ Properly Evaluated Plaintiff's Subjective Symptoms and Adequately Articulated His Findings**

In his third assignment of error, Plaintiff argues that the ALJ failed to properly evaluate his subjective symptoms under SSR 16-3p and 20 C.F.R. §§ 404.1529, 416.929, "leaving the Court unable to proceed to a substantial evidence review." (ECF Doc. 9, pp. 21-26.) While acknowledging that "the ALJ appeared to consider the factors set forth in the ruling" (*id.* at p. 23), Plaintiff argues that: (1) "the ALJ provides no sufficient explanation" as to why he discounted Plaintiff's testimony that he could not walk more than 100 feet, could not carry a gallon of milk, and needed a walker (*id.* at p. 22); (2) the ALJ erred by relying on Plaintiff's activities of daily living without addressing "the limited manner in which Plaintiff actually performed his activities" (*id.* at p. 23); and (3) the ALJ erred by ignoring the impact Plaintiff's "deep-seated mistrust of the medical profession" had on his non-compliance with treatment recommendations" (*id.* at pp. 24-25). He argues that the ALJ provided "nothing more than a recitation of evidence and a boilerplate conclusion" resulting in a lack of logical bridge and "leaving the Court unable to meaningfully review the ALJ's conclusion that Plaintiff's statements were not supported by the evidence." (*Id.* at pp. 25-26.) The Commissioner argues in response that the ALJ appropriately considered the relevant factors under 20 C.F.R. § 404.1529(c), and his findings are supported by substantial evidence. (ECF Doc. 12, pp. 20-25.)

**1. Legal Standard for Evaluation of Subjective Symptoms**

As a general matter, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d at 476; *see also* 20 C.F.R. § 404.1529(a) and SSR 16-3p, *Evaluation of Symptoms in Disability Claims*, 82 Fed. Reg. 49462, 49463 (Oct. 25, 2017) (explaining that a claimant's statements of symptoms alone are not sufficient to establish the existence of a physical or mental impairment or disability).

Under the two-step process used to assess the limiting effects of a claimant's symptoms, a determination is first made as to whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms. SSR 16-3p, 82 Fed. Reg. 49462, 49463; *Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). If that requirement is met, the second step is to evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. SSR 16-3p, 82 Fed. Reg. 49462, 49463; *Rogers*, 486 F.3d at 247. There is no dispute that the first step is met in this case (Tr. 24), so the discussion will focus on the ALJ's compliance with the second step.

In undertaking this analysis, an ALJ should consider objective medical evidence, a claimant's subjective complaints, information about a claimant's prior work record, and information from medical and non-medical sources. SSR 16-3p, 82 Fed. Reg. 49462, 49464-49466; 20 C.F.R. § 404.1529(c)(3). Factors relevant to a claimant's symptoms include daily activities, types and effectiveness of medications, treatment received to address symptoms, and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 82 Fed. Reg. at 49465-49466; 20 C.F.R. § 404.1529(c)(3).

**2. The ALJ Appropriately Evaluated Plaintiff's Subjective Complaints**

The ALJ found that Mr. Hale's medically determinable impairments could be expected to cause the alleged symptoms, but also found "the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 28.) Prior to that finding, the ALJ considered Mr. Hale's reports of: using a walker; pain in his upper legs with shakiness, stiffness, and burning; shortness of breath; difficulty with postural movements and with walking, standing, sitting, and climbing; and depression that caused difficulty completing tasks, getting along with others, and responding appropriately to stressors and change. (Tr. 21, 24.) He also considered Mr. Hale's reported activities, which included maintaining an independent household, driving, shopping, managing finances and appointments, watching television, playing Frisbee golf, reading, doing puzzles, and attending to hygiene and grooming and indoor household chores such as cleaning, laundering clothing, and preparing simple meals. (Tr. 28.) The ALJ also noted that Plaintiff "did work for much of the year after his date last insured." (*Id.*)

Consistent with SSR 16-3p, the ALJ also considered objective test results and treatment notes from the alleged disability period. (Tr. 24-27.) He discussed diagnostic testing related to Plaintiff's severe impairments, such as pulmonary function testing that showed a possible restrictive process but no obstructive process (Tr. 25 (citing Tr. 1520), and chemical stress testing that was negative for inducible or reversible ischemia (Tr. 26 (citing Tr. 1381, 1383)). He noted that physical examinations "consistently, albeit not universally, reported mildly adverse, or benign findings," including: normal coordination, gait, motor, and sensory function; no joint swelling; grossly intact neurological function; normal pulmonary effort and breath sounds; adequate pulse oximetry; normal heart rate and rhythm, heart sounds, and pulses; and no murmur, rub, gallop, or edema. (Tr. 24-26.) He acknowledged Mr. Hale's past myocardial

infarctions, treated with angioplasty and stenting, and "the potential of amyloidosis" stemming from an abnormal ECG; but he also noted that further diagnostic testing left "a low suspicion for this condition," and the ECG "otherwise described moderate left ventricular hypertrophy. . . left ventricular ejection fraction recovered to sixty-to-sixty five percent, with no regional wall abnormalities, and no-to-trivial valvular regurgitation." (Tr. 25.) He further observed that while Mr. Hale had been prescribed various treatments for his physical impairments, he was often noncompliant with treatment, "likely owing to a long-standing, deep-seated, well-documented dislike of the medical profession and its practitioners." (Tr. 24-26.)

Regarding Mr. Hale's mental impairments, the ALJ noted his diagnoses of depressive disorder, PTSD, dysthymic disorder, anxiety disorder, mood disorder, and affective disorder. (Tr. 26.) He observed that Mr. Hale had been prescribed psychotropic medication but had been "non-compliant or at best partially compliant with their use." (*Id.*) He also observed that Mr. Hale only initiated psychological treatment as a condition of probation (*id.*) and only attended counseling sporadically from July 2023 to May 2024 (Tr. 27). He further observed that his mental status examinations consistently showed "mildly adverse, or benign findings," including: cooperative behavior; normal psychomotor activity; calm, euthymic, friendly, happy, or relaxed mood; clear, normal, and intact thought processes; good insight and memory; normal judgment; good eye contact; and appropriate affect, though at one visit he did present as poorly groomed with body odor. (*Id.*)

The ALJ also considered and found partially persuasive the opinion of the state agency medical consultant on reconsideration, who opined that Mr. Hale could perform light work with no climbing and limited exposure to fumes, hazards, and temperature extremes. (Tr. 28-29, 130-31.) The ALJ found additional postural and environmental limitations were supported by Mr.

Hale's recent diagnosis of neuropathy, his respiratory impairment, and the possibility of "sudden 'burst' of pain from whatever source, sudden-onset dyspneic episode, or the need to recover a misstep faster than his body habitus would allow." (Tr. 29.) The ALJ also found the opinions of the state agency psychological consultants unpersuasive because those state agency consultants found no severe mental impairments, while the record showed "a claimant with chronic psychological disorders." (Tr. 29-30.)

Finally, the ALJ summarized his reasons for finding that Plaintiff's reported symptoms were not as severe as alleged:

> Although [Plaintiff's] work activity [after the alleged onset date] did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. In short, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. While none of these activities, considered in isolation, would warrant or direct a finding of "not disabled"; when considered in combination, they strongly suggest that the claimant would be capable of engaging in the work activity contemplated by the residual functional capacity.
>
> . . .
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the claimant has conceded engagement in treatment solely in order to secure Social Security disability benefits and has requested that specific diagnoses be issued in furtherance of that goal []. He has conceded taking psychiatric medications only sporadically, and only as a perceived pre-requisite to obtaining Social Security benefits []. He did not initiate psychiatric treatment of his own accord, but rather at the behest of a local court and as a condition of probation []. These factors take on added significance, occurring, as they have, within the context of a deep-seated, long-standing, and well-documented mistrust and dislike of the medical profession and its practitioners generally [].

(Tr. 28 (citations omitted).) Considering the analysis detailed above, the undersigned concludes that the ALJ considered the factors in SSR 16-3p, clearly articulated how he considered the evidence in making his findings, and made a determination that was supported by substantial

evidence. Plaintiff's conclusory assertion that the ALJ "provide[d] no sufficient explanation as to why Plaintiff's disabling assertions . . . were discounted" (ECF Doc. 9, p. 22) lacks merit.

As to Plaintiff's argument that the ALJ erred by relying on his daily activities without addressing "the limited manner in which Plaintiff actually performed his activities" (ECF Doc. 9, p. 23), it is clear from the above analysis that the ALJ did not simply base his RFC findings on Plaintiff's ability to perform limited daily activities. Instead, the ALJ considered the activities in the context of medical treatment notes that reflected largely normal examination findings and clinical testing, evidence that Mr. Hale refused or was non-compliant with various treatment recommendations, and medical opinions finding Plaintiff no more than moderately limited in physical and mental functioning. Even if the ALJ did not discuss every element of the reported activities, he was not required to discuss every piece of evidence to render a decision supported by substantial evidence. *See Boseley v. Comm'r of Soc. Sec. Admin*., 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (per curiam)). Further, the ALJ acknowledged that none of the identified "activities, considered in isolation, would warrant or direct a finding of 'not disabled,'" but further found: "when considered in combination, they strongly suggest that the claimant would be capable of engaging in the work activity contemplated by the residual functional capacity." (Tr. 28.) In this context, the undersigned finds Plaintiff has not shown that the ALJ "failed to address the limited manner in which Plaintiff actually performed his activities" (ECF Doc. 9, p. 23), or that the ALJ's failure to specifically discuss some of Mr. Hale's alleged limitations in completing his daily activities deprived the ALJ's subjective symptom analysis of the support of substantial evidence.

Lastly, Plaintiff argues that the ALJ "repeatedly ignored the impact" of Mr. Hale's "deep-seated distrust of the medical profession" and improperly found his "non-compliance indicated a

lack of severity" instead of acknowledging the impact of "fear" on "Plaintiff's ability to have the mental capacity to adhere to treatment" as required under SSR 16-3p. (ECF Doc. 9, pp. 25-26.)

SSR 16-3p requires an ALJ to consider a claimant's reasons for non-compliance with treatment recommendations. *See* SSR 16-3p, 82 Fed. Reg. at 49466; 20 C.F.R. § 404.1529(c)(3). However, as the Commissioner points out, the Ruling does not require an ALJ "to automatically rehabilitate Plaintiff's credibility merely because those reasons exist." (ECF Doc. 12, p. 23 (citation omitted).) Here, the ALJ considered Plaintiff's reasons for not complying with treatment and still found his failure to seek treatment weighed against his allegations of disabling symptoms. It is not this Court's place to reweigh that evidence, so long as the ALJ's findings were supported by substantial evidence. *See Garner*, 745 F.2d at 387 (noting that a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."); *Blakley*, 581 F.3d at 406 ("'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'") (quoting *Mullen*, 800 F.2d at 545) (alteration in original).

For all the reasons set forth above, the undersigned concludes that the ALJ appropriately addressed Mr. Hale's subjective complaints in accordance with the regulatory requirements articulated in SSR 16-3p and provided sufficient explanation of his reasoning to allow this Court to undertake a meaningful review. Further, the undersigned concludes that Mr. Hale has not met his burden to demonstrate that the ALJ's findings lacked the support of substantial evidence. Accordingly, the undersigned finds the third assignment of error lacks merit.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

October 14, 2026

*/s/Amanda M. Knapp*
AMANDA M. KNAPP
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).